## JAMES JACQUES

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

RAPE—*sufficiency of evidence to sustain conviction.* On the trial of an indictment against the defendant and one H, for rape, the proof showed that H gave the girl some wine, and persuaded her to go to Chicago with him, which was but a short distance; that she left the saloon where she had been staying, in the evening, and after walking about a half mile on the road to the city, she was overtaken by H and the defendant in a buggy, and was taken by them to the city, when the defendant got out and left them, and she and H went to a hotel together, where H called for a room for himself and wife. It further appeared that they occupied the room together all night; that she went with H to the room voluntarily; made no outcry in the night or complaint the next morning; and the girl, in her cross-examination, stated that after leaving the buggy, she walked, but did not recollect of putting up at the hotel that night; that she woke up about seven o'clock next morning; did not know that she had connection with H that night; that, to her best knowledge, she did not with him or any other man; that she laid at the back of the bed, and that H did not even feel of her, nor even ask her, or make a vulgar remark to her. On this evidence, the defendant was convicted of an assault with intent to commit a rape: *Held,* that there was no evidence to sustain the verdict, although it tended to prove a conspiracy between H and the defendant to abduct the girl.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

This was an indictment against the plaintiff in error and one George Harris for a rape upon the person of one Jane Smith. They were indicted jointly, as principals. A trial was had against both defendants, which resulted in a verdict, finding both guilty of an assault with intent to commit rape, and fixing the term of their imprisonment in the penitentiary at one year. The defendant Jacques entered his motion for a new trial, which was overruled, and thereupon he brought the record to this court upon a writ of error.

Messrs. GARRISON, ANDERSON & EASTMAN, for the plaintiff in error.

Mr. C. H. REED, State's Attorney, for the People.

Mr. JUSTICE BREESE delivered the opinion of the Court:

At the May term, 1870, of the recorder's court of the city of Chicago, the plaintiff in error, James Jacques, was indicted jointly with one George Harris for a rape on the person of one Jane Smith, a girl then about fifteen years of age.

The cause was tried before the criminal court of Cook county, at the February term, 1871, at which a verdict was rendered, finding the defendants guilty of an assault with intent to commit a rape, and their punishment fixed at one year's confinement in the penitentiary.

Jacques entered a motion for a new trial, which the court overruled, and rendered judgment on the verdict.

To reverse this judgment Jacques brings the record here by writ of error, and assigns various errors, only one of which is it deemed important to notice; and that is, the sufficiency of the evidence to support the finding.

We have examined the record, voluminous as it is, made so by the introduction of much matter which could have been properly omitted, and fail to find a particle of evidence going to establish the guilt of the plaintiff in error of the matter charged, or of any act bordering on an assault with intent to commit rape.

There is proof tending to show that these parties were concerned in a plan to induce this girl to accompany them to Chicago, in which they succeeded, using no force whatever, she accompanying them in their carriage voluntarily.

The girl was staying at a Mrs. Goodyear's, who kept a saloon at Leyden Centre, in the environs of Chicago, and was there induced by Harris to partake of some wine, for which he called, and he became importunate in his efforts to be

familiar with her, and to induce her to go with him to Chicago. She, perhaps somewhat stupefied by the wine she had taken, left Mrs. Goodyear's some time in the evening, and walked some distance (about half a mile) on the road to Chicago, when she was overtaken by Harris and Jacques in a buggy, and, by some means not satisfactorily explained, became an occupant of it. When they reached the city, Jacques got out of the buggy, and Harris and the girl also. This was at Barter's saloon, corner of Union and Erie streets, into which Jacques entered with John Lomax, and took something to drink. Harris and the girl went to the National Hotel, at the corner of Washington and Wells streets, and about one mile from this saloon. At the hotel, Harris asked for a room for himself and wife, and they were put in room No. 14, where they remained all night. Michael Smith, the proprietor of this hotel, testifies that he saw them when they went up stairs from the office; he lit them up; did not notice anything in the actions of the girl whatever more than would be in the action of any female; heard no outcry during the night nor in the morning; no complaint was made to him. When he asked for a room, the girl was outside, in the hall; his name was not registered as Harris. The girl was standing against the door when he opened it, and she moved out of the way for him to pass her. She walked up stairs without assistance, deliberately into the room; had to go up sixteen steps.

The girl, on her cross-examination, states that after she got out of the buggy she walked, but don't remember putting up at the National Hotel that night. She says she woke up about seven o'clock the next morning; does not know that she had any carnal connection with Harris that night; to her best recollection, she had not, to her knowledge, that evening. Harris, in the morning, gave her money to buy a ticket to go to Harlem. She further says she never had connection with any man, to her knowledge. She further says she lay at the back of the bed; that Harris did not even feel of her,

nor even ask her, or make a vulgar remark. She has no knowledge that Harris did anything to her at the hotel.

The landlord, who lighted them to bed, saw nothing unusual in her appearance or deportment. She did not appear to be under the influence of stimulants, and, unassisted, ascended a flight of stairs of sixteen steps, and passed the night with Harris without making any complaint. If he had carnal knowledge of her at that time, it was not forcible, but with her consent, and she was of age to give consent. However outrageous his conduct may have been, it did not amount to rape, and there is nothing to show that plaintiff in error knew Harris had taken her to the hotel. They separated, after reaching Chicago, at Barter's saloon, after which, plaintiff in error was not in the company of Harris and the girl. This was a mile from the hotel.

An examination of the evidence fails to show anything to sustain the finding of the jury. That plaintiff and Harris were concerned in a conspiracy to abduct the girl, the evidence tends strongly to show; indeed but little doubt can be entertained of their guilt in this respect; but the charge in the indictment is not sustained, nor is the verdict. For that reason, the verdict should have been set aside. Refusing to set it aside was error, and, for the error, the judgment is reversed.

*Judgment reversed.*